**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*


OLUFIKAYO ABIOLA AKINTOLA,          *

     **Plaintiff,**                      *

**v.**                                **Case No.: GJH-21-00897**
                                     **UNDER SEAL**
                            *

**BACKGROUNDCHECKS.COM, LLC,**
     **Defendant.**

                                  *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff Olufikayo Abiola Akintola filed a four-count Complaint against Defendant

Backgroundchecks.com, LLC ("BGC") alleging violations of the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. § 1681 *et seq.* (Count I), injurious falsehood (Count II), false light (Count

III), and negligence (Count IV) arising from its preparation and furnishing of a consumer report

to Plaintiff's potential employer, which Plaintiff alleges contained false and misleading

information and caused him harm. Pending before the Court are a number of motions including

Defendant's Motion to Enforce Settlement Agreement and For Sanctions, ECF No. 19, and

Plaintiff's Motion for Leave to File Surreply, ECF No. 29.[1] No hearing is necessary. *See* Loc. R.

105.6 (D. Md. 2021). For the following reasons, Defendant's Motion to Enforce Settlement

---

[1] Plaintiff and Defendant have also filed four motions to seal. In the first, Defendant filed a motion to seal its exhibits A and G of its Motion to Enforce Settlement Agreement and For Sanctions, ECF No. 20. In the second, Plaintiff filed a motion to seal its opposition to Defendant's Motion and exhibits 1 and 2 to its Opposition, ECF No. 24. In the third, Defendant filed a motion to seal its Reply, ECF No. 28, and in the fourth, Plaintiff filed a motion to seal its Surreply, ECF No. 31. The Court entered a Stipulated Discovery Confidentiality Order requiring that all motions and related documents containing confidential information be filed under seal. *See* ECF Nos. 17 & 18. These exhibits, as well as the contents of the exhibits as discussed in the various memoranda, have been designated as confidential. Therefore, Plaintiff's and Defendant's Motions to Seal, *see* ECF Nos. 20, 24, 28 & 31, are granted. *See Karn v. PTS of Am.*, LLC, No. 16-cv-3261-GJH, 2022 WL 743944, at \*1 (D. Md. Mar. 11, 2022).

Agreement and For Sanctions is granted, in part, and denied, in part, and Plaintiff's Motion for Leave to File Surreply is denied.

## I.      BACKGROUND[2]

### A.  Factual Background

Plaintiff Olufikayo Abiola Akintola is an adult resident of Prince George's County, Maryland. ECF No. 3 ¶ 3. Defendant BGC, a Delaware corporation, provides criminal background information and reports to businesses and consumers. *Id.* ¶¶ 4, 8.

In early 2019, Plaintiff was contacted by Dynanet Corporation ("Dynanet"), a recruiting firm, regarding a full-time job opportunity as a "Training Specialist" for federal contractor General Dynamics Information Technology ("GDIT"). *Id.* ¶ 9. On or about February 6, 2019, Plaintiff interviewed for the Training Specialist position with Dynanet and GDIT and was offered the position, which he ultimately accepted. *Id.* ¶ 10. Plaintiff's offer was conditional, pending a background check, and the interview process included having Plaintiff sign an "Acknowledgement and Authorization Regarding Background Investigation," which authorized Dynanet to perform a background check on Plaintiff. *Id.*

Dynanet hired SentryLink LLC ("SentryLink") to perform the background check on Plaintiff, and on or about February 7 or 8, 2019, Defendant provided the background check report to SentryLink. *Id.* ¶¶ 11, 12. SentryLink then provided the report to Dynanet, who then provided the report to Plaintiff's perspective employer, GDIT. *Id.* ¶ 13. Plaintiff contends that Defendant "was the original source for the information contained in the background check report on Plaintiff." *Id.* ¶ 14. Moreover, he contends that the background report obtained by Dynanet

---

[2] Unless otherwise stated, the background facts are taken from Plaintiffs' Complaint, ECF No. 3, and are presumed to be true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

"contained inaccurate, false, and misleading statements" regarding Plaintiff, specifically

"accusing him of currently being charged with crimes including illegal drug possession and

serious traffic violations in the State of Maryland." *Id.* ¶ 15. On or about February 8, 2019,

Dynanet provided a copy of the report to Plaintiff and the following day, Plaintiff provided

Dynanet with documents showing that the information contained in the report was "inaccurate,

false, and misleading," including court orders of expungement and related court certificates of

compliance. *Id.* ¶¶ 16–17. Plaintiff contends that the criminal charges in the report were

dismissed and expunged from his record, and that Defendant "should not have included any

charges in [its] report if those charges had been expunged." *Id.* ¶ 18.

On February 12, 2019, Plaintiff was informed by Dynanet that the job offer for the

Training Specialist position with GDIT was being rescinded due to the information in the

criminal background report. *Id.* ¶ 19.

### B. Procedural Background

Plaintiff filed suit against Defendant on January 31, 2021, in the Circuit Court for Prince

George's County Maryland. ECF No. 1 ¶ 1. Defendant removed the case to this Court on April 9,

2021, on the basis of federal question and diversity jurisdiction, pursuant to 28 U.S.C. §§ 1331

and 1332, respectively. *Id.* ¶¶ 9, 18.

On April 21, 2021, Defendant served Plaintiff with a request for a copy of the settlement

agreement entered into between SentryLink and Plaintiff (the "Agreement"), which Defendant

contends resolves the instant dispute, *see* ECF No. 19-5 at 2. Plaintiff initially objected to

producing the Agreement on May 20, 2021 and again on June 14, 2021, on the grounds that it

was confidential and irrelevant, *see* ECF No. 19-6 at 2–3; *see also* ECF No. 19-7 at 2–4.

Defendant filed an Unopposed Motion to Enter Stipulated Discovery Confidentiality Order on

July 15, 2021, ECF No. 17, which the Court entered on August 11, 2021, ECF No. 18. Plaintiff

produced the Agreement on August 19, 2021, ECF No. 19-2; *see also* ECF No. 19-8.

Defendant filed the now pending Motion to Enforce Settlement Agreement and for

Sanctions on October 6, 2021, ECF No. 19. Plaintiff opposed the Motion on November 3, 2021,

ECF No. 23, and Defendant replied on December 1, 2021, ECF No. 27. Plaintiff filed the

additionally pending Motion for Leave to File Surreply on December 15, 2021, ECF No. 29,

which Defendant opposed on December 23, 2021, ECF No. 32.

## II.   DISCUSSION

### A.  Settlement Agreement and Release

Defendant argues that it is entitled to a dismissal, with prejudice, of the entirety of

Plaintiff's Complaint because Plaintiff released all claims against it pursuant to the July 30,

2019, Settlement Agreement he entered into with SentryLink. ECF No. 19-1 at 5. Defendant

states that in May 2019, Plaintiff filed a complaint against SentryLink relating to the allegedly

inaccurate background check report.[3] ECF No. 19-1 at 2.[4] Plaintiff and SentryLink entered into a

Settlement and Release Agreement (the "Agreement") on July 30, 2019, which Defendant

submits in support of its Motion. *See* ECF No. 19-2. The Agreement contains a release provision,

which states the following:

> In exchange for the consideration set forth in this Settlement Release, [Plaintiff], on
> behalf of himself, and his agents, attorneys, family members, heirs, representatives,
> executors, administrators, and assignees, hereby release and forever discharge
> SentryLink, LLC, and its agents, current and former employees, owners, members,
> principals, officers, directors, attorneys, their insurers (including Travelers Casualty and
> Surety Company of America and its parents, subsidiaries, affiliates, successors and
> assigns), and its heirs, representatives, executors, administrators, assignees, predecessors

---

[3] The case is *Akintola v. Sentry Link LLC*, Case No. CAL19-15017 (Circuit Court for Prince George's County, Maryland).

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

in interest, subsidiaries, parent companies, affiliates, and related companies, and all other persons and entities, of and from all claims, causes of action, lawsuits, judgments, and demands of whatsoever in kind, in law or in equity, known or unknown, foreseen and unforeseen, that arise from or are related in any way to the February 7, 2019 Background Report provided by SentryLink to Dynanet Corporation, or any fact and/or circumstance which has been alleged, or which could have been alleged in the Complaint, the Amended Complaint, or in the Lawsuit. This Release does not bar any EEOC or other action in the future by [Plaintiff] against Dynanet by [Plaintiff] arising from the withdrawal of their employment offer as a result of the background check.

ECF No. 19-2 ¶ 2.[5]

A district court has "inherent authority, deriving from [its] equity power, to enforce settlement agreements." *Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (explaining that "resolution of a motion to enforce a settlement agreement . . . may be accomplished within the context of the underlying litigation[.]"). "To enforce a settlement agreement under its inherent equity power, the district court '(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions.'" *Swift v. Frontier Airlines, Inc.*, 636 F. App'x 153, 154–55 (4th Cir. 2016) (quoting *Hensley*, 277 F.3d at 540–41).

Here, the parties agree, and the Agreement provides, that "the law of Maryland will govern all questions relating to the construction, interpretation, and enforcement of this Settlement Release." ECF No. 19-2 ¶ 11; *see also* ECF No. 19-1 at 6; ECF No. 23 at 5. "Under Maryland law, a general release—a release aimed at 'all mankind'—bars all future claims against all other entities associated with the events that gave rise to a particular lawsuit." *Jacobs v. Venali, Inc.*, 596 F. Supp. 2d 906, 911 (D. Md. 2009) (citing *Peters v. Butler*, 253 Md. 7, 251 A.2d 600, 602 (1969) (citing *Pemrock, Inc. v. Essco Co.*, 252 Md. 374, 249 A.2d 711 (1969))). Put differently, "a broad, general release . . . applies to all tortfeasors, regardless of whether the

---

[5] In further support of its Motion, Defendant also submits copies of emails the parties' counsel exchanged between November 2019 and August 2020. See ECF No. 19-3 at 2; ECF No. 19-4 at 2.

tortfeasor in question is a party to, or even mentioned in, the pertinent release." *Bowles v. Ford Motor Co.*, No. 18-cv-2837-PX, 2020 WL 1663131, at *2 (D. Md. Apr. 3, 2020) (citing *Berhane v. Allstate Ins. Co.*, No. 13-cv-1713-PJM, 2013 WL 5960891, *3 (D. Md. Nov. 6, 2013)).

Therefore, the question before the Court is whether Defendant is subject to the release in the Agreement. Under Maryland law, "[r]eleases are interpreted according to established principles of contract interpretation." *Auslander v. Helfand*, 988 F. Supp. 576, 580 (D. Md. 1997) (*citing Bernstein v. Kapneck*, 290 Md. 452, 459, 430 A.2d 602 (1981)). This requires the Court to "construe the release to effectuate the parties' intentions." *Id.* (citing *Panamerican Consulting Co. v. Broun*, 238 Md. 548, 550, 209 A.2d 575 (1965)). "If, however, the release's language is clear and unambiguous, the words of the release will be afforded their plain and ordinary meaning, and no further interpretation, including parol or extrinsic evidence, is permitted." *Id.* (citation omitted).

"Under Maryland law, '[t]he interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law.'" *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005) (quoting *Sy–Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 829 A.2d 540, 544 (2003)). "The purpose of contract interpretation is to determine and effectuate the intent of the parties, and the primary source for identifying this intent is the language of the contract itself." *Id.* (internal citation omitted). If the Court finds that a contract is unambiguous on a dispositive issue, "it may then properly interpret the contract as a matter of law." *Cochran v. Norkunas*, 919 A.2d 700, 709 n.8 (Md. 2007) (quoting *Wash. Metro Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007)).

"A contract is not ambiguous simply because, in litigation, the parties offer different meanings to the language. It is for the court, supposing itself to be that reasonably prudent

person, to determine whether the language is susceptible of more than one meaning." *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank*, N.A., 400 Md. 718, 751, 929 A.2d 932, 952 (2007). "The determination of whether language is susceptible of more than one meaning includes a consideration of 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution[.]'" *Calomiris v. Woods*, 353 Md. 425, 436, 727 A.2d 358, 363 (1999) (quoting *Pacific Indem. v. Interstate Fire & Cas.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985)).

As an initial matter, the Agreement between Plaintiff and SentryLink is complete. *See Swift*, 636 F. App'x at 154–55. The section of the Agreement entitled "Complete Agreement" states:

> All agreements and understandings with respect to the subject matter hereof are reflected within this Settlement Release and shall not be modified or affected by any offer, proposal, settlement, representation, agreement or understanding either oral or written, made by or for any party in connection with negotiation of the terms hereof. This Settlement Release may be amended only by written agreement of the Parties.

ECF No. 19-2 ¶ 12. Plaintiff indicated his intention to be bound by the Agreement when he signed it on July 30, 2019. *See id.* at 5 (Agreement page with Plaintiff's signature).

The Court is also readily able to determine the Agreements terms and conditions, *see Swift*, 636 F. App'x at 154–55, because the release provision of the Agreement explicitly states that:

> In exchange for the consideration set forth in this Settlement Release, [Plaintiff] . . . hereby release and forever discharge *all other persons and entities,* of and from all claims, causes of action, lawsuits, judgments, and demands of whatsoever in kind, in law or in equity, known or unknown, foreseen and unforeseen, that arise from or are related in any way to the February 7, 2019 Background Report provided by SentryLink to Dynanet Corporation, or any fact and/or circumstance which has been alleged, or which could have been alleged in the Complaint, the Amended Complaint, or in the Lawsuit.

ECF No. 19-2 ¶ 2 (emphasis added). This release contains broad language, as is typical for general releases. *See Peters*, 253 Md. at 9, 251 A.2d at 601 (language in release clause referenced defendant and "all other persons, firms or corporations liable or who might be claimed to be liable on account of all injuries, known and unknown which have resulted or may in the future develop from the accident") (internal quotations and citations omitted); *Pemrock*, 252 Md. at 376, 249 A.2d at 712 (language in release clause referenced "and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever"). The release provision is broad and Plaintiff, by signing the Agreement, agreed to "release and forever discharge . . . all other persons and entities" from "all claims, causes, of action, lawsuits, judgments, and demands of whatsoever in kind, in law or in equity, known or unknown, foreseen and unforeseen, that arise from or are related in any way to the February 7, 2019 Background Report provided by SentryLink to Dynanet Corporation[.]" ECF No. 19-2 ¶ 2.

Accordingly, then, the release provision in the Agreement is best understood as a general release as it pertains to "all other persons and entities." *See Jacobs*, 596 F. Supp. at 911 (citing *Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc.*, 973 F.2d 349, 353 (4th Cir. 1992)). The language in the release provision is clear and unambiguous, and it is not susceptible to more than one meaning, *see Diamond Point Plaza Ltd. P'ship*, 400 Md. at 751, 929 A.2d at 952. Therefore, the words of the release will be afforded their plain and ordinary meaning. *See Auslander*, 988 F. Supp. at 580. Here, Defendant clearly falls into the "all other persons and entities" language in the release provision of the Agreement because each of the four claims alleged in Plaintiff's Complaint stem from the background report that Defendant first provided to SentryLink, who then submitted the report to Dynanet, *see e.g.*, ECF No. 3 ¶¶ 12–14, 23, 35, 41,

45. Because the Agreement is complete and the Court can readily determine its terms and conditions—specifically that Defendant is subject to the release provision—the Court can enforce the Agreement. *See Swift*, 636 F. App'x at 154–55.

This conclusion is further supported by the fact that the release provision provides an explicit carve out for potential claims: "This Release does not bar any EEOC or other action in the future by [Plaintiff] against Dynanet by [Plaintiff] arising from the withdrawal of their employment offer as a result of the background check[,]" ECF No. 19-2 ¶ 2. There is, however, no similar carve out for claims against Defendant. *See Jacobs*, 596 F. Supp. 2d at 911 n. 6 ("Indeed, by specifically naming those parties not released from potential liability . . . the [] release implies that all other relevant parties not named were released.") (citing 17A Corpus Juris Secundum § 327 ("Under the maxim 'expressio unius est exclusio alterius,' the expression in a contract of things of a class implies the exclusion of all not expressed")). For all of these reasons, Plaintiff's claims are barred by the clear and unambiguous language in the release provision, and the Court will enforce the Agreement.

Plaintiff proffers two primary arguments in an attempt to avoid this outcome, but each is unavailing. First, Plaintiff argues that, under Maryland law, a third-party may only enforce a contract if it is an "intended beneficiary," and that because Defendant was not an intended beneficiary of the Agreement between Plaintiff and SentryLink, it cannot seek to enforce the release provision in the Agreement, *see* ECF No. 23-1 at 5. Plaintiff's cited authority does not support his argument. For example, Plaintiff cites to *CX Reinsurance Co. v. Levitas*, 207 F. Supp. 3d 566, 569 (D. Md. 2016) in support of his argument "regarding a third party's enforcement of a contract to which it is not a party," but this case is about a purported third-party beneficiary of an insurance policy, and not a third party's ability to enforce a settlement agreement. Accordingly,

Plaintiff's reliance on this case, and other cases analyzing whether a party is an intended beneficiary, *see* ECF No. 23-1 at 6–11, is misplaced.

Second, Plaintiff's argument that a July 26, 2019 email exchange between Plaintiff's counsel and counsel for SentryLink, *see* ECF No. 23-3 at 1, "indicates [counsel's] agreement that BGC was not covered by the release because SentryLink and BGC are not related to each other and 'the two companies are completely separate from each other,'" ECF No. 23-1 at 8, likewise fails. Here, the Court has determined that the language in the release provision of the Agreement is clear and unambiguous. And where "the release's language is clear and unambiguous . . . no further interpretation, including parol or extrinsic evidence, is permitted." *See Auslander*, 988 F. Supp. at 580. Therefore, the Court is not permitted to consider the email exchange between Plaintiff's counsel and counsel for SentryLink. In sum, neither of Plaintiff's arguments can overcome the clear and unambiguous language contained in the release provision of the Agreement. Therefore, the Court grants Defendant's Motion to Enforce the Settlement Agreement.

## B. Fees and Costs

In its Motion, Defendant also seeks attorneys fees and argues that Plaintiff's "continued prosecution of his claims," including his refusal to dismiss the Complaint and initial refusal to produce the Agreement, was "for improper purposes, frivolous, and in bad faith, and have unreasonably and vexatiously multiplied these proceedings." ECF No. 19-1 at 9 (citing *Cochran v. Ernst & Young*, 758 F. Supp. 1548, 1559 (E.D. Mich. 1991)).

Defendant argues that it should be awarded attorney's fees based on statutory authority and the Court's inherent authority. *See* ECF No. 19-1 at 10. Specifically, Sections 1681n(c) and 1681o(b) of the Fair Credit Reporting Act authorize a court to award attorney's fees "[u]pon a

finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action . . . was filed in bad faith or for purposes of harassment . . . to the prevailing party." 15 U.S.C. § 1681n(c); 15 U.S.C. § 1681o(b). 28 U.S.C. § 1927 states that "[a]ny attorney who so multiplies the proceedings in any case to increase costs unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. And the district court has the inherent authority to impose sanctions against a party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Thomas v. Ford Motor Co.*, 244 F. App'x 535, 538 (4th Cir. 2007) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

Most notably, "[b]ad faith is 'not simply bad judgment or negligence, but implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Shah v. Collecto, Inc.*, No.04-cv-4059-DKC, 2005 WL 2216242, at *14 (D. Md. Sept. 12, 2005) (citing Black's Law Dictionary 139 (6th ed. 1990)).

Here, Defendant merely concludes that because Plaintiff chose to file this lawsuit, and initially denied its request to produce a copy of the Agreement between Plaintiff and SentryLink, "the only logical conclusion" is that "Plaintiff and his counsel have acted unreasonably, vexatiously, in bad faith for purposes of harassment, wantonly, and for oppressive reasons." ECF No. 19-1 at 11. This conclusory argument, without more, is not enough to meet Defendant's "burden of demonstrating that Plaintiff acted in bad faith or engaged in harassment at the time of filing of [his] complaint . . . rather than simple bad judgment or negligence." *See Penshiaku v. Wells Fargo Bank, Nat'l Ass'n*, No. 5:20-CV-00014-M, 2020 WL 2841782, at *3 (E.D.N.C. June

1, 2020) (denying request for attorney's fees under 15 U.S.C. §§ 1681n(c) and 1681o(b)); *see also Thomas v. Bank of Am., N.A.*, No. 1:11CV606, 2012 WL 263497, at *4 (M.D.N.C. Jan. 30, 2012) (same); *Eghrari-Sabet v. ENT, Allergy & Asthma Ctr.*, PC, No. 19-cv-2055-GJH, 2020 WL 6063463, at *2 (D. Md. Oct. 14, 2020) (denying motion for sanctions, in the form of attorney's fees and costs, under 28 U.S.C. § 1927 and the Court's inherent authority). Therefore, the Court denies Plaintiff's request for attorney's fees under 15 U.S.C. §§ 1681n(c), 1681o(b), 28 U.S.C. § 1927, and the Court's inherent authority.[6]

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Enforce Settlement Agreement and For Sanctions is granted, in part, and denied, in part, and Plaintiff's Motion for Leave to File Surreply is denied. Because Plaintiff is bound by the terms of the Agreement, his claims against Defendant will be dismissed. A separate Order shall issue.

Date: <u>July 19, 2022</u>                         <u>    /s/                        </u>
                                                GEORGE J. HAZEL
                                                United States District Judge

---

[6] Plaintiff's Motion for Leave to File Surreply, ECF No. 29, will also be denied because it does not address arguments that could not have been anticipated and addresses previously. Moreover, even if the Court considered Plaintiff's arguments, the Court's ruling would remain unchanged.